IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARCHELLE BRAXTON,

Plaintiff,

v. Civil Action No. 3:26cv331

BANK OF AMERICA CORPORATION, et al.,

Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANTS DAVID M. BOYD AND VELOX VALUATIONS, LLC'S MOTION TO DISMISS (ECF No. 24) (the "MOTION TO DISMISS"), Defendants' MEMORANDUM IN SUPPORT OF DEFENDANTS DAVID M. BOYD AND VELOX VALUATIONS, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 25), PLAINTIFF, DARCHELLE BRAXTON'S, OPPOSITION TO DEFENDANTS' DAVID M. BOYD AND VELOX VALUATIONS, LLC'S MOTION TO DISMISS (ECF No. 29), PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' DAVID M. BOYD AND VELOX VALUATIONS, LLC'S MOTION TO DISMISS (ECF No. 30), and DEFENDANTS DAVID M. BOYD AND VELOX VALUATIONS, LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS (ECF No. 31). For the foregoing reasons, the MOTION TO DISMISS will be granted.

**I. BACKGROUND**

Plaintiff Darchelle Braxton is a Virginia resident and a Black woman who owns a residential property. ECF No. 23 at 2. The

property is as an investment and a rental property, which Braxton owns. Id. In or around February 2025, Braxton visited a Bank of America branch located in Virginia to inquire about obtaining a loan secured by that rental property. Id. at 4. The Bank of America branch was located in a majority-white neighborhood. Id.

Braxton applied for a $100,000 loan with an expected interest rate of 6.125% and monthly payments of $850.62. Id. She wanted to use the loan to fund improvements and renovations to her investment property. Id. She completed a mortgage-loan application and provided Bank of America with financial and property documentation during the application process. Id. The AMENDED COMPLAINT alleges that Braxton owned the property free of any encumbrances. Id. Braxton also has a steady income because she owns and runs her own pediatric dental practice. Id. Additionally, she lives in a dual income household and makes income from renting her residential property. Id. However, Braxton claims that, sound financial position notwithstanding, she was treated unfairly during her loan application process due to her race. Id. at 5.

The AMENDED COMPLAINT alleges that Bank of America employees treated Braxton poorly. Id. She alleges that: they "did not appear to want Plaintiff as a customer;" they subjected her to "unusually poor customer service;" and they did not "take her loan inquiry seriously." Id. The process of applying for a loan took several months. Id. During that time, Braxton worked with four different

white loan officers, all of whom she alleges treated her differently from non-Black customers. Id.

The first loan officer Braxton worked with was Ryan. Id. He instructed Braxton to transfer her property from the LLC into her personal name to satisfy Bank of America's lending requirements. Id. Braxton followed Ryan's instructions, transferred the property into her name, and submitted the requested application materials. Id. Ryan then stopped responding to Braxton's communications. Id. When Braxton finally reached him, he informed her that "he was too busy to handle her application." Id.

Braxton was then assigned to a second loan officer, Frank. Id. He required Braxton to re-submit the documents that she had previously given to Ryan. Id. at 6. Braxton complied. Id. Again, Frank became unresponsive to her communications. Id. Braxton later learned that Frank was no longer working at Bank of America, and that Bank of America had taken no action to reassign her loan application to another officer. Id.

Braxton's loan application was then re-assigned to Ryan. Id. However, he continued to be unresponsive to her communications, which resulted in a delay. Id. Because her calls and emails were being ignored, Braxton visited Bank of America in person in an effort to contact Ryan. Id. During one such visit, "an employee told Plaintiff that they did not have a phone with which to call Plaintiff even though several telephones were present in the branch

and visible to Plaintiff." Id. On another visit, Braxton saw Ryan walk out of the building, allegedly so that he could avoid speaking to her. Id. He did not re-enter the building until Braxton had left. Id. The AMENDED COMPLAINT alleges that Braxton was humiliated and felt disrespected by Ryan's behavior. Id.

At this point, Braxton complained to a manager. Id. Shortly after that complaint, Braxton was reassigned to a new loan officer, Tammy. Id. at 7. Tammy asked Braxton to re-start the application process and re-submit the same documents she already had given to Ryan and Frank. Id.

Soon after, Tammy stopped working at the Bank of America, and Braxton was re-assigned to another loan officer, Nathan, who again required Braxton to re-submit the same documents. Id. at 7-8. The AMENDED COMPLAINT alleges that Nathan was "dismissive and unprofessional," and that he "commented that he already had Plaintiff's Social Security number and personal information and that he could steal her information if he wanted." Id. at 8. Braxton claims that she felt "frustrated, singled out, and discriminated against, especially because other people of different races and genders were treated in a more professional and respectful manner." Id.

As is customary in the lending business, Bank of America required an appraisal of the rental property as part of its review of Braxton's loan application. Id. Bank of America commissioned

Velox to perform the appraisal. Id. Velox assigned David Boyd to inspect and appraise the property. Id. On or around September 14, 2025, Boyd inspected the rental property. Id. On or around September 19, 2025, Boyd issued an appraisal report valuing the property at approximately $135,000. Id.

According to the AMENDED COMPLAINT, this valuation was "shockingly low given the characteristics of the home and recent sales in the neighborhood." Id. A different company, Premier Appraisal Group ("Premier"), inspected and appraised her home. Id. That appraisal, performed in October 2025, valued the property at approximately $208,000. Id.

Braxton alleges that "[t]here were no material changes to the Property's structure, size, use, neighborhood, or market conditions sufficient to explain a $73,000 difference in value." Id. at 9. The AMENDED COMPLAINT claims that Boyd's appraisal "contained numerous material errors, omissions, and inconsistencies." Id. First, the AMENDED COMPLAINT alleges that Boyd's appraisal contained an incorrect map reference. Id. It referred to zip code 40060, which is in Marion County, Kentucky, instead of 23222, where the property is actually located in Richmond, Virginia. Id.

Boyd's appraisal report is attached as Exhibit 1 to the AMENDED COMPLAINT. ECF No. 23-1. It is clear from the face of the report that Boyd considered the correct address. In fact, on the

very same page that contains the incorrect map reference, the property's address is properly listed with the correct zip code. Id. at 30.

The AMENDED COMPLAINT also alleges that the appraisal report "incorrectly stated that the property value for single-family homes in the Property's neighborhood was 'stable.' In reality, and as confirmed by the subsequent appraisal, property values were rising during the relevant period." ECF No. 23 at 9. Additionally, the AMENDED COMPLAINT claims that the report "contained an inconsistent description of the Property's condition. For instance, one portion referred to peeling paint, while another portion stated there was 'no evidence of peeling paint.'" Id.

Finally, the AMENDED COMPLAINT alleges that Boyd relied on a "sales-comparison approach" which found only two comparable properties available in the relevant market area, while the subsequent Premier appraisal identified four suitable comparable properties in the area. Id. at 10. The AMENDED COMPLAINT claims that Boyd selected properties with materially lower values than Braxton's property. Id.

The AMENDED COMPLAINT says that, because of the appraisal report's alleged deficiencies, the report did not reflect a "neutral and complete evaluation of the available market evidence." Id. It claims that Boyd "cherry-picked and manipulated comparable homes to justify a predetermined low valuation." Id.

Braxton believes that Boyd's low valuation of the property was "influenced by conscious or unconscious racial bias." Id. at 11.

The AMENDED COMPLAINT also alleges that the rental property was occupied by a mixed-race couple, and that the female tenant's white mother and Braxton were present during Boyd's inspection. Id. at 10. Boyd asked Braxton if she owned the home, and Braxton said yes. Id. According to the AMENDED COMPLAINT, Boyd asked this question because he "did not like the idea that a Black woman owned the home being rented by a white tenant." Id. at 11. Based on Boyd's question and the alleged deficiencies in his appraisal report, the AMENDED COMPLAINT claims that Boyd engaged in racial discrimination against Braxton.

Bank of America received and reviewed Boyd's report. Id. It subsequently denied Braxton's loan application on October 8, 2025. Id. at 12. The AMENDED COMPLAINT alleges that Bank of America "knew or should have known that the appraisal contained material errors and inconsistencies, including the incorrect geographic reference, inconsistent condition descriptions, limited comparable analysis, and failure to account for rental income." Id. Nonetheless, Bank of America "accepted and relied on the appraisal." Id. Bank of America simply stated that "the loan has been declined," and did not provide a "sufficient statement of reasons as to why the loan application was denied." Id. Braxton believes that the loan

application denial was based on Boyd's appraisal report because Bank of America denied her application weeks after the report. Id.

Following Bank of America's denial, Braxton applied for a loan with Guild Mortgage Company, the company that held the mortgage on her primary residence. Id. Guild Mortgage Company approved Braxton for a $105,000 loan at 6.5% on the rental property. Id. at 12-13. The AMENDED COMPLAINT argues that this is evidence that Braxton was qualified for a loan, and that Bank of America denied her loan application due to her race. Id. at 13.

On April 17, 2026, Braxton filed this action, alleging violations of the Fair Housing Act against all Defendants, 42 U.S.C. § 3601 et seq. ("FHA") (COUNT I), the Equal Credit Opportunity Act against Bank of America, National Association, 15 U.S.C. § 1691(a) et seq. ("ECOA") (COUNT II), the Civil Rights Act of 1866 against all Defendants, 42 U.S.C. § 1981 (COUNTS III, IV), Virginia Fair Housing Laws against all Defendants, Va. Code Ann. § 36-96.1 et seq. ("VFHL") (COUNT V), Breach of the Duty of Good Faith and Fair Dealing against Bank of America, National Association (COUNT VI), Tortious Interference with Business Expectancy against Boyd and Velox (COUNT VII), the ECOA against Bank of America, National Association, 15 U.S.C. § 1691(d) et seq. (COUNT VIII), Negligence against Boyd and Velox (COUNT IX), and Constructive Fraud against Boyd and Velox (COUNT X).

On June 23, 2026, Braxton voluntarily dismissed all claims against Bank of America Corporation, ECF No. 7, and on August 17, 2026, Braxton voluntarily dismissed all claims against Bank of America, National Association with prejudice, ECF No. 27. The only remaining defendants are Boyd and Velox.

On August 17, 2026, Boyd and Velox filed the MOTION TO DISMISS (ECF No. 24). On September 2, 2026, Braxton filed her brief in OPPOSITION, and on September 4, 2026, Boyd and Velox replied. The MOTION TO DISMISS is ripe for decision.

## II. LEGAL STANDARD

A complaint must state facts upon which a plausible claim for relief can be granted. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A complaint need not contain detailed factual allegations. Harris v. Brennan, No. 3:18-cv-334, 2019 WL 1233848 at *2 (E.D. Va. Mar. 15, 2019). Rather, Fed. R. Civ. P. 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief...." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015). But, Twombly and Iqbal require that the Complaint contain sufficient facts from which a court can conclude that there is a plausible claim for relief.

When reviewing a motion under Rule 12(b)(6), the Court accepts as true the factual allegations of the complaint and construes all inferences in the light most favorable to the nonmovant. Rockville Cars LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). However, courts need not accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). And, courts may also consider any documents attached to the Complaint without converting the motion to one that must be assessed under Fed. R. Civ. P. 56. Landfall Tr. LLC v. Fidelity Nat. Title Ins. Co., 647 F. Supp. 3d 464, 466 (E.D. Va. 2022).

"Plausibility requires more than a sheer possibility that a defendant has acted unlawfully, and where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility...." Winners Circle Imps. v. Whitney's Auto. Venture Enter., No. 2:24cv718, 2025 WL 2856525 at *3 (E.D. Va. Oct. 8, 2025) (citation modified). And threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient to survive a motion to dismiss. Id. (quoting Iqbal, 556 U.S. at 678). "The court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Simmons v. United Mortg. and Loan Inv., 634 F.3d 754, 768 (4th Cir. 2011) (citation modified).

## III. ANALYSIS

### A. COUNTS I and V - Violations of the Fair Housing Act and Virginia Fair Housing Law

The FHA makes it unlawful to engage in racial discrimination in residential real-estate transactions. 42 U.S.C. § 3605(a). That includes "the making or purchasing of loans" for "improving, repairing, or maintaining a dwelling." 42 U.S.C. § 3605(b)(1). The VFHL similarly prohibits race discrimination in real estate transactions. Va. Code Ann. § 36-96.1. The VFHL "largely tracks the FHA," and accordingly, claims under each are analyzed under the same standards. Latef v. Hasta Capital, No. 1:24cv2218, 2025 WL 1905583 at *1 (E.D. Va. Mar. 18, 2025) (quoting Matarese v. Archstone Cmtys., LLC, 468 F. Appx. 283, 284 n.2 (4th Cir. 2012)).

To bring a claim under the FHA or VFHL, "a plaintiff must allege that she is a member of a protected class and was discriminated against because of her membership in that class." Williams v. Navy Fed. Credit Union, No. 3:24cv824, 2025 WL 2712220 at *4 (E.D. Va. Sept. 23, 2025). A plaintiff may state a claim either under a disparate impact or disparate treatment theory of liability. Id.

A disparate impact claim requires an allegation that a defendant's actions have a disproportionate adverse effect on minorities. Id. A disparate treatment claim requires an allegation that "a defendant's actions were motivated by a racially

discriminatory purpose, i.e., intentional discrimination." Id. (citation modified). To establish a disparate treatment claim, "a plaintiff must allege that (1) she is a member of a protected class and (2) the defendant acted with discriminatory intent." Id. (citation modified). A plaintiff may establish discriminatory intent through either direct or circumstantial evidence, or through inferential evidence. Id. The AMENDED COMPLAINT does not allege that Boyd or Velox's actions have a disproportionate adverse effect on minorities, and so, it does not allege a disparate impact theory of liability.

So, the analysis turns to disparate treatment. Boyd and Velox argue that COUNTS I AND V fail to allege that they acted with discriminatory intent, and that for that reason both COUNTS are legally insufficient. ECF No. 25 at 7.

Braxton responds to that argument by noting that the AMENDED COMPLAINT pleads the following facts which give rise to an inference of race discrimination: Boyd knew that Braxton owned the property; knew that Braxton was Black; observed that the property was occupied by a white tenant; expressed disapproval of a Black woman owning a home rented by a white tenant; and provided a low valuation of the property. ECF No. 30 at 5. Braxton is correct that the AMENDED COMPLAINT alleges that Braxton, a Black woman, owned the appraised property that was rented to an interracial

couple.[1] However, Braxton's brief inaccurately describes the allegations of the AMENDED COMPLAINT when it asserts that Boyd "expressed disapproval of a Black woman owning a home rented by a white tenant." In fact, the AMENDED COMPLAINT actually alleges only that Boyd "did not like the idea that a Black woman owned the home being rented by a white tenant." ECF No. 23 at 11. That, of course, is speculative opinion about Boyd's subjective state of mind which neither alleges discriminatory intent nor permits an inference that Boyd had, or acted on, any discriminatory intent. There is a world of difference between an assertion that Boyd actually said something that expressed discrimination and Braxton's unsupported speculation that he subjectively felt that way. And, that difference is fatal to COUNTS I AND V. That fatal flaw cannot be remedied by recasting the allegation in a brief. Nor does the AMENDED COMPLAINT otherwise plead facts that give rise to an inference of racial discrimination.

---

[1] The AMENDED COMPLAINT also alleges that Boyd's appraisal was lower than another one. But it alleges that Braxton was provided a loan. It does not allege the loan-to-value ratio of the loan for which she applied at Bank of America or the loan-to-value criteria for either bank. Nor does it allege that Bank of America turned down the loan because the property did not meet the loan-to-value ratio required by Bank of America. But, according to the Court's calculations, the actual loan-to-value ratio for the Bank of America loan, using Boyd's appraisal of the property, is 74.07%, and the actual loan-to-value ratio for the Guild Mortgage Company loan, using the Premier report, is 50.48%.

The AMENDED COMPLAINT fails for the additional reason that it provides no plausible basis for a causal link between Boyd's awareness that the property was owned by a Black woman and rented to a white tenant, and the valuation he ascribed to the property. And, Braxton does not in her brief show where a plausible allegation to that effect can be found in the AMENDED COMPLAINT. Because the AMENDED COMPLAINT fails to allege facts that support an inference of discriminatory intent, it fails to state a claim against Boyd and Velox in COUNTS I and V.

**B. COUNTS III and IV - Violation of the Civil Rights Act of 1866**

The Civil Rights Act of 1866 prohibits racial discrimination in the making and enforcing of contracts. 42 U.S.C. §§ 1981, 1982; Runyon v. McCrary, 427 U.S. 160, 168 (1976). The parties dispute what standard applies to assess whether a complaint plausibly states a claim for relief under Sections 1981 and 1982.[2]

According to Defendants, Braxton must allege intentional discrimination on the basis of race, because that is "an essential element for a prima facie case of disparate treatment under the FHA, § 1981, and § 1982." ECF No. 25 at 7. And, Defendants argue

---

[2] The Supreme Court of the United States has held that the requirements of Sections 1981 and 1982 are the same because they were first enacted as part of the Civil Rights Act of 1866 and use nearly identical language. Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 589 U.S. 327, 336 (2020).

that the Section 1981 and 1982 claims fail for the same reasons that render the FHA claim insufficient. Id.

Braxton argues that a different standard applies, taking the view that in BNT Ad Agency v. City of Greensboro, the Fourth Circuit adopted a different test for racial discrimination in lending. 837 Fed. Appx. 962, 972 (4th Cir. 2020). There, the plaintiffs claimed that they had been denied a loan on the basis of race. Id. at 968. The Court of Appeals adopted a four-factor test to be applied to Section 1981 race discrimination in lending claims. Id. at 970-71. The plaintiff must allege that: (1) she is a member of a protected class; (2) she applied and was qualified for credit that was available from the Defendant; (3) the application was denied, or its approval was made subject to unreasonable or overly burdensome conditions; and (4) there is a causal nexus between the harm suffered and plaintiff's membership in a protected class. Id.

Whatever may be said about the binding effect of the unpublished decision in BNT Ad Agency as establishing a new test, it makes little sense to apply that test in this case. Although the AMENDED COMPLAINT alleges that Braxton suffered race discrimination in the lending context, Braxton did not seek to borrow money from Boyd and Velox. Indeed, it would be strange to require Braxton to show that she "applied and was qualified for credit that was available" from Boyd and Velox. But, even if this

framework were applicable to this case, Braxton's claims in COUNTS III AND IV would still fail.

True, the AMENDED COMPLAINT alleges membership in a protected class because Braxton is Black. ECF No. 23 at 4. And, the AMENDED COMPLAINT alleges that Braxton applied for credit from Bank of America and was qualified for such credit because it states that Braxton had "an above-average income," "owned the property free and clear of any mortgages or other encumbrances," and that her "strong equity position and creditworthiness made her an ideal loan customer." Id. Additionally, the AMENDED COMPLAINT alleges that Braxton's loan application was denied. Id. at 11.

However, the AMENDED COMPLAINT does not allege a causal nexus between the loan denial and Boyd's supposed race discrimination. Braxton claims that the AMENDED COMPLAINT has satisfied the pleading requirements because she alleges that Boyd "produced a racially biased undervaluation." ECF No. 30 at 5. But, for the reasons discussed in Section III.A, supra pp. 11-13, the AMENDED COMPLAINT does not allege any plausible causal relationship between the alleged undervaluation of Braxton's property and Braxton's race.

We turn now to the correct legal standard for pleading a legally sufficient Section 1981 or 1982 claim. A plaintiff must plead that, but for race, she would not have suffered the loss of a legally protected right. Comcast Corp. v. Nat'l Ass'n of African

American-Owned Media, 589 U.S. 327, 341 (2020). And here, the AMENDED COMPLAINT does not plead sufficient facts to infer that, but for Braxton's race, Boyd would have attributed a higher value to the property. The AMENDED COMPLAINT does make the conclusory allegation that Boyd "would have valued the Property higher if the homeowner had not been a Black woman," and that he "treated Plaintiff less favorably than similarly situated white applicants." ECF No. 23 at 11, 20. However, the AMENDED COMPLAINT offers no facts from which those inferences can plausibly be drawn. Accordingly, COUNTS III and IV fail to state a cognizable claim upon which relief can be granted.

**C. COUNT VII - Tortious Interference with Business Expectancy**

A claim for tortious interference with a business expectancy requires the plaintiff to allege, and plead plausible supporting facts to show that: (1) there existed of a valid business expectancy; (2) the Defendant had knowledge of the expectancy; (3) there was intentional interference causing a breach or termination of the expectancy; and (4) that the interference caused damage to the party whose expectancy has been disrupted. Schaecher v. Bouffault, 772 S.E.2d 589, 602 (Va. 2015). Additionally, for a prospective business opportunity, a plaintiff must also allege that the defendant employed improper methods. Dunlap v. Cottman Transmission Sys., 754 S.E.2d 313, 318 (Va. 2014). Improper methods include "illegal or tortious means, means that involve unethical

conduct, and 'sharp dealing, overreaching, or unfair competition.'" Sauls v. Penn Va. Res. Corp., 121 F.R.D. 657, 661 (W.D. Va. 1988) (quoting Duggin v. Adams, 360 S.E.2d 832, 837 (Va. 1987)).

A business expectancy requires more than a subjective belief or hope that the expectancy would arise. See Williams v. Dominion Tech. Partners, 576 S.E.2d 752, 758 (Va. 2003). Therefore, the pleading must allege a probability, not mere possibility, of future economic benefit. Com. Bus. Sys., Inc. v. Halifax Corp., 484 S.E.2d 892, 897 (Va. 1997). This must be shown by pleading some objective fact that shows, or that permits an inference, that the expectancy would materialize. Id.

The parties dispute whether Braxton had a valid business expectancy in her loan application to Bank of America. Defendants argue that, although the AMENDED COMPLAINT "alleges that [Braxton] had a valid business expectancy in obtaining a loan from Bank of America and that Boyd and Velox interfered with that expectancy, she alleges no facts demonstrating anything more than her subjective belief that she qualified for financing." ECF No. 25 at 11. However, the AMENDED COMPLAINT has alleged sufficient facts to permit an inference that Braxton had a valid business expectancy in her loan application. For instance, it is alleged that Braxton was qualified for the loan because she had an above-average income. ECF No. 23 at 4. It is also alleged that Braxton's "strong equity

position and creditworthiness made her an ideal loan customer," and that Braxton obtained a similar loan from Guild Mortgage Company immediately after Bank of America denied her loan application. Id. at 4, 12-13. Those are plausible, objective facts that permit an inference that the expectancy was likely to materialize.

The AMENDED COMPLAINT also alleges knowledge by Boyd and Velox of Braxton's loan application. It states that Bank of America commissioned Velox to inspect and appraise the property as part of Braxton's loan application, and that Boyd and Velox "knew that the appraisal would be used in connection with Plaintiff's mortgage application and that the appraised value could affect [Bank of America's] underwriting decision." Id. at 8, 11.

But, the AMENDED COMPLAINT does not allege intentional interference with the loan application causing a breach or termination of the expectancy. True, the AMENDED COMPLAINT asserts that Boyd and Velox provided a "materially undervalued appraisal," included "incorrect and contradictory information in the appraisal report," created a "discriminatory appraisal," and created "obstacles that impeded Plaintiff's ability to secure the financing she sought." ECF No. 23 at 24-25. However, the AMENDED COMPLAINT does not allege that Boyd or Velox intended for Braxton's loan application to be denied. Braxton argues that the AMENDED COMPLAINT is sufficient to satisfy this requirement because it

"alleges that without Defendant's intentional conduct she would have obtained the loan...." ECF No. 30 at 12. But merely alleging that Defendants' intentional conduct happened to interfere with Braxton's loan application is insufficient. Rather, Braxton must allege that the Defendants' objective was to interfere with the business expectancy. That allegation is missing from the AMENDED COMPLAINT. And indeed, there are no factual allegations present in the AMENDED COMPLAINT which would give rise to that inference.

The AMENDED COMPLAINT alleges that Braxton suffered damages from the denial of her loan application in the form of "lost or delayed financing, additional financing costs, interest-rate differential, appraisal and application-related expenses, and other out-of-pocket losses...." ECF No. 23 at 14. Therefore, COUNT VII satisfies the fourth sufficiency requirement.

But, the AMENDED COMPLAINT fails to allege the necessary "improper motive." It makes the conclusory assertion that Boyd and Velox "intentionally engaged in discriminatory practices" while appraising Braxton's home. Id. And, that is said to include "arbitrarily limiting the area from which Defendant drew comparables, then selecting among the least valuable comparables from what remained, and, finally, further depressing the appraisal by making unjustifiable adjustments to value that further devalued the Plaintiff's home." Id. From these assertions, Braxton argues that the improper motive alleged in COUNT VII is discrimination.

ECF No. 30 at 12. However, as discussed in Section III.A, supra pp. 11-13, the AMENDED COMPLAINT does not plead that Boyd or Velox discriminated against Braxton on the basis of race, except in a conclusory form that does not satisfy Twombly and Iqbal. Because it does not allege that Defendants intended to interfere with the loan application, and because it does not allege that Defendants had an improper motive, COUNT VII fails to state a claim for Tortious Interference with a Business Expectancy.

**D. COUNT IX - Negligence**

To plead a legally sufficient negligence claim, the AMENDED COMPLAINT must allege duty, breach of that duty, causation, and damages. Delk v. Columbia/HCA Healthcare Corp., 523 S.E.2d 826, 830 (Va. 2000). Whether a defendant owes a plaintiff a duty is a question of law. Burns v. Gagnon, 727 S.E.2d 634, 641 (Va. 2012).[3]

Defendants rely on Provident Bank v. O'Brien for the proposition that real estate appraisers hired by lenders do not owe a duty to third-parties, i.e., the loan applicant. 53 Va. Cir. 107 at *2 (Va. Cir. Ct. 2000). Provident Bank reiterated the rule that a duty may either arise from a contract or the common law.

[3] The parties' dispute centers around whether Boyd and Velox owed Braxton a duty. Issues of breach, causation, and damages are generally left to the jury. See Kellermann v. McDonough, 684 S.E.2d 786, 790 (Va. 2009). Therefore, and considering the dispute framed by the parties (the party presentation principle), the Court declines to address whether the AMENDED COMPLAINT establishes breach, causation, and damages.

Id. If the duty arises from a contractual commitment, the parties must be in privity of contract. Id. As for the common law, the court held that regulations and standards of the Real Estate Appraiser Board do not create an independent common law duty to third parties. Id.

When applying state law, federal courts look to the decisions of authoritative state courts, here, those of the Supreme Court of Virginia or the Virginia Court of Appeals. Of course, well-reasoned non-authoritative state court decisions are also instructive. And, Provident Bank is well-reasoned.

The AMENDED COMPLAINT seems to allege both common law and contractual duties by asserting that "Plaintiff was in privity with Defendants because Bank of America contracted with Defendant for Plaintiff's benefit," and that "[u]nder Virginia law, a professional real estate appraiser owes a duty to perform appraisal services with ordinary care, skill, and diligence that a reasonably prudent appraiser would exercise, in accordance with applicable professional standards (such as the Uniform Standards of Professional Appraisal Practice, USPAP)." ECF No. 23 at 26 (emphasis added).

Beginning with the common law duty, Provident Bank made clear that standards laid out by appraisal boards "do not create legal duties that, if breached, are actionable at common law or under any Virginia statute." 53 Va. Cir. at *3. While Provident Bank did

not expressly address the USPAP, its logic extends to all professional guidelines applicable to appraisers. Provident Bank relied on cases from the Supreme Court of Virginia holding that standards of professional conduct do not establish a common law duty. See Ward v. Ernst & Young, 435 S.E.2d 628, 632 (Va. 1993) (professional standards governing accountants do not establish a common law duty); Allen v. Lindstrom, 379 S.E.2d 450, 456-57 (Va. 1989) (professional standards governing real estate agents do not establish a common law duty); see also Ayyildiz v. Kidd, 266 S.E.2d 108, 112 (Va. 1980) (professional standards governing attorneys do not establish a common law duty). This Court declines to create a new legal duty giving rise to a private cause of action. See Allen, 379 S.E.2d at 456-57 ("The creation of a new legal duty giving rise to a private cause of action for damages should not be accomplished by judicial fiat."). The reasoning of Provident Bank, based as it is on decisions of the Supreme Court of Virginia, is sound. That decision, and the Supreme Court of Virginia decisions on which it is based, teach that Boyd did not owe Braxton a common law duty.

Turning to the contractual duty, Braxton alleges that she is in privity with Defendants. ECF No. 23 at 26. But she offers no more information than that, curiously stating that she need not specify "the particulars of the negligence." ECF No. 30 at 13.

Negligence that arises out of performance of a contract may only be asserted by a party to the contract or a person for whose benefit the contract was avowedly made. Standard Oil Co. v. Wakefield's Adm'r, 47 S.E. 830, 830-31 (Va. 1904). Considering that the AMENDED COMPLAINT does not allege that Braxton was a party to the contract between Bank of America and Velox, Braxton's only viable argument would be that she was an intended beneficiary of the contract and thus is in privity of contract with Velox.

To show that Braxton was an intended beneficiary of the contract between Velox and Bank of America, she must plead and prove that "the contracting parties clearly and definitely intended that the contract confer a benefit upon" her. Collins v. First Union Nat'l Bank, 636 S.E.2d 442, 446-47 (Va. 2006). This is a demanding standard necessitating the allegation that Braxton was not benefitting only incidentally from the contract. Copenhaver v. Rogers, 384 S.E.2d 593, 596 (Va. 1989).

The AMENDED COMPLAINT fails to allege any facts that give rise to an inference that the contract between Bank of America and Velox was clearly and definitely intended to confer a benefit upon Braxton. The AMENDED COMPLAINT alleges that, as part of Braxton's loan application, Bank of America "required an appraisal of the Property." ECF No. 23 at 8. Bank of America "commissioned or ordered the appraisal from Velox." Id. Velox and Boyd "knew that the appraisal would be used in connection with Plaintiff's mortgage

application and that the appraised value could affect [Bank of America's] underwriting decision." Id. at 11. Contrary to Braxton's view, none of those allegations give rise to an inference that the contract between Bank of America and Velox clearly and definitely intended to confer a benefit on Braxton. The fact that Bank of America was to use the appraisal as part of its decisional process when considering Braxton's application for a loan does not itself show that the contract between Velox and Bank of America was intended to provide a benefit to Braxton. And, the AMENDED COMPLAINT alleges no facts from which an inference of benefit for Braxton otherwise can plausibly be drawn. Indeed, the contract seems to have been entered into for the benefit of Bank of America. And, in any such contract, there is no guarantee that the lender will in fact approve a loan application upon receiving an appraisal report. The report simply allows the lender to make an informed decision about whether to approve the loan application. There is no "clear" or "definite" benefit to the applicant, who clearly would never benefit from an appraisal that would not warrant making the loan.

Because the AMENDED COMPLAINT fails to allege that Braxton was an intended beneficiary of the contract, it also fails to allege that she was in privity of contract with Velox. Because there is no duty arising from either the common law or a

contractual obligation, COUNT IX fails to state a claim on which relief can be granted.

**E. COUNT X - Constructive Fraud**

"To prevail on a constructive fraud claim, a plaintiff must show by clear and convincing evidence that the defendant negligently or innocently made a false representation of material fact, and that the plaintiff suffered damage as a result of his reliance upon that misrepresentation." SuperValu, Inc. v. Johnson, 666 S.E.2d 335, 341-42 (Va. 2008). "[E]xpressions of opinion cannot form the basis of an action for fraud[.]" Mortarino v. Consultant Eng'g Servs., 467 S.E.2d 778, 781 (Va. 1996). There is no bright line test to ascertain whether false representations constitute matters of opinion or statements of fact. Id. Each statement should be "adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances." Id. (citing Packard Norfolk, Inc. v. Miller, 95 S.E.2d 207, 211 (Va. 1956)).

The supposed misrepresentations are that the appraisal report stated that it: (1) "accounted for the market conditions, trends, and neighborhood housing characteristics, provided data or analysis that accounted for the fact that the property was a rental property, and used reliable and correct data;" (2) "Defendants represented that they conducted the appraisal with the ordinary

care, skill, and diligence that a reasonably prudent appraiser would exercise, in accordance with applicable professional standards;" and (3) "the appraisal was unbiased and nondiscriminatory." ECF No. 23 at 27-28. According to the AMENDED COMPLAINT, "[t]he representation(s) [were] false because Defendants conducted a biased and discriminatory appraisal; did not conduct the appraisal with the ordinary care, skill, and diligence that a reasonably prudent appraise[r] would exercise, in accordance with applicable profession standards; did not [] account for market condition trends and neighborhood characteristics; did not account for the fact that the property was a rental property; and failed to use reliable and correct data." ECF No. 23 at 28.

Defendants argue that those allegations "merely restate Plaintiff's disagreement with the appraisal's methodology," and that "Plaintiff identifies no specific false statement of material fact made by either Boyd or Velox to Plaintiff, but instead challenges the appraisal opinion itself." ECF No. 25 at 15. Braxton responds that the misrepresentation was Boyd's affirmation that he performed a fair and accurate analysis, which was an objectively incorrect statement. ECF No. 30 at 14.

It is true that the AMENDED COMPLAINT enumerates several mistakes allegedly made in the appraisal report that allegedly materially influenced the conclusions reached in the report.

Specifically, it states that Boyd "made adjustments that were unjustified or unsupported by the data identified in the report," "cherry-picked and manipulated comparable homes to justify a predetermined low valuation," "incorrectly stated that the property value for single-family homes in the Property's neighborhood was 'stable,'" and "contained an incorrect map reference." ECF No. 23 at 9, 10. Those are sufficient allegations that Boyd negligently or innocently made a misrepresentation of material fact.

Nonetheless, COUNT X falls short of the requirements for a sufficiently stated claim of constructive fraud because it does not allege that any misrepresentation (whether negligent or innocent) was ever made by Defendants to Braxton, or that Braxton relied on the appraisal report.[4] And, reliance is an indispensable element of a viable claim for constructive fraud. Piedmont Tr. Bank v. Aetna Cas. & Sur. Co., 171 S.E. 2d 264, 267 (Va. 1969). These failings are fatal to a viable fraud claim. For that additional reason, COUNT X is defective.

---

[4] While the AMENDED COMPLAINT states that "Plaintiff reasonably relied upon Defendant giving an accurate appraisal so that she could get a loan," ECF No. 23 at 28, this is a threadbare recitation of the reliance element of constructive fraud. The AMENDED COMPLAINT does not allege that Braxton took any action in reliance on the appraisal report. Therefore, the AMENDED COMPLAINT is insufficient to support a cause of action for constructive fraud.

Samuels v. Fredericksburg Motorcars, 44 Va. Cir. 98 (Va. Cir. Ct. 1997) is instructive. There, the plaintiff purchased a used car from a dealership. Id. at *1. Following the purchase, he discovered that the car had been improperly rebuilt after a collision. Id. He then sought to plead a claim for constructive fraud against the mechanic who had rebuilt the car. Id. at *2. According to the plaintiff, the mechanic had fraudulently repaired the car and sold it to the dealership. Id. The Court held that, because the mechanic had not made any representations to the plaintiff about the physical condition of the car, the plaintiff had no cause of action in fraud against the mechanic. Id. at *3. The Court reasoned that the mechanic "never misrepresented anything to [the plaintiff] because he never communicated with him, directly or indirectly, and did not know or have reason to know that he would become a subsequent purchaser of the car." Id. at *2. Here, as in Samuels, unless the Defendants made some representation to Braxton, she could not have relied on it. The AMENDED COMPLAINT alleged no misrepresentation that was made to Braxton. So, COUNT X fails for the additional reason that reliance is absent from its allegations.

Moreover, the AMENDED COMPLAINT alleges that Bank of America, not Braxton, relied on Boyd's report. ECF No. 23 at 12. While it is true that, unlike in Samuels, Boyd was aware of Braxton's relationship with Bank of America, that does not change the facts

that: (1) the alleged misrepresentations were not alleged to have been made to Braxton; and (2) Braxton was not the person who relied on the report. The absence of such allegations is fatal to COUNT X because the party who relied on the false statement must be the same party who suffered resulting damage. See State Farm Mut. Auto. Ins. Co. v. Remley, 618 S.E.2d 316, 321 (Va. 2005). For the foregoing reasons, COUNT X will be dismissed.[5]

[5] Defendants also argue that the negligence and constructive fraud claims are barred by the economic loss rule. ECF No. 25 at 14, 16-17. Braxton claims that the AMENDED COMPLAINT does not only allege economic loss, but also emotional distress resulting from Defendants' conduct. ECF No. 23 at 28; ECF No. 30 at 15. The Supreme Court of Virginia has indicated that damages for emotional distress are generally only recoverable if they accompany a personal injury or an intentional or reckless tort. Naccash v. Burger, 290 S.E.2d 825, 830 (Va. 1982). So, damages for emotional distress are likely not recoverable under theories of negligence or constructive fraud absent personal injury or intentional conduct. Therefore, the AMENDED COMPLAINT's claims of emotional distress do not insulate it from the economic loss rule. And, the Supreme Court of Virginia has instructed that economic losses are only recoverable when the parties are in privity of contract. See Ward v. Ernst & Young, 435 S.E.2d 628, 632 n.3 (Va. 1993). As established in Section III.D, supra pp. 21-25, Braxton was not in privity of contract with Velox, and therefore the economic loss rule bars her negligence and constructive fraud claims. But, it is not necessary to sort out that matter because COUNTS IX and X fail for other reasons.

## IV. CONCLUSION

For the reasons set forth above, the MOTION TO DISMISS (ECF No. 24) will be granted and the action will be dismissed with prejudice.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 20, 2026